**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **Falco Latinoamericana, S.A. de C.V.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:24-cv-842** |
| **ALFA LAVAL INC,**<br>   **Serve:**<br>**C T Corporation System, R.A.**<br>**4701 Cox Rd., Ste 285**<br>**Glen Allen, VA 23060-6808,** | |
| **Defendants.** | |

## COMPLAINT

COMES NOW the Plaintiff, Falco Latinoamericana, S.A. de C.V. ("Falco" or "Plaintiff"), by counsel, and moves for judgment against the Defendants, ALFA LAVAL INC ("Alfa Laval" or "Defendant"), on the grounds and in the amount as hereinafter set forth:

## NATURE OF ACTION

1.      This is a claim for Breach of Contract in which Falco seeks damages from Defendant in excess of $700,000, plus pre- and post-judgment interest, for unpaid invoices pursuant to a written contract.

## PARTIES

2.      Plaintiff Falco is a company established under Mexican law with its principal place of business in Mexico.

*Complaint*
*Falco Latinoamericana v. Alfa Laval*
*Page 1 of 9*

3.      Alfa Laval is a New Jersey corporation with its principal place of business relating to these transactions in Richmond, Virginia.

## VENUE AND JURISDICTION

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C ¶ 1332 because it is a dispute between a U.S. citizen and a foreign citizen, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.      This Court has personal jurisdiction over both parties, and venue over this matter, because the parties' contract designates courts located in the jurisdiction of Alfa Laval's principal place of business, i.e. Richmond, Virginia, as the exclusive jurisdiction for any dispute between the parties.

## FACTS

### Facts about the parties' projects and Alfa Laval's failure to pay invoices

1.      Falco is a leading global supplier of industrial materials including, at issue in the present case, steel tanks.

2.       Alfa Laval claims to be a leading global supplier of products and solutions for heat transfer, separation, and fluid handling. Alfa Laval works in a variety of industries, most significantly petroleum refining and beverage processing.

3.      On or about March 6, 2019, Falco and Alfa Laval entered into an agreement titled "Engineering & Supply General Purchasing Conditions" ("Terms and Conditions"). A true and accurate copy of the Terms and conditions are attached as _Exhibit 1_.

4.      The Terms and Conditions applied to multiple purchase orders in which Alfa Laval ordered industrial materials (primarily steel tanks) from Falco.

5.      Notably, Alfa Laval placed purchase orders for the manufacture, construction, and

_Complaint_
_Falco Latinoamericana v. Alfa Laval_
_Page 2 of 9_

delivery of steel tanks and other equipment for two projects at issue: a petroleum refinery for Phillips 66 in California and an addition to the Molson Coors plant in Colorado.

6.      The Terms &Conditions contain the following definitions:

a.   Contract: The contract concluded by the Parties pursuant to the Purchase Order.

b.   Parties: The Purchaser (i.e., the Alfa Laval company in the name of which the purchase order issued) and the Seller.

c.   Project: A planned specific business activity of Purchaser or end customer (e.g. the erection of a plant) for the implementation of which the Purchaser or end customer relies inter alia on the Seller's Works.

d.   Purchase Order: The document issued by the Purchaser to the Seller in which the Purchaser expresses his intention to purchase the Works.

e.   Site: The location of the project implementation.

f.   Services: All specified and necessary engineering, administration, procurement, installation, supervisory, commissioning, training services, etc. to be provided by Seller.

g.   Supplies: All specified and necessary hard- and software to be delivered by the Seller.

h.   Works: All Supplies and Services to be furnished and/or rendered by the Supplier with respect to the Project as specified in or as may reasonably be inferred from the Contract.

7.      Alfa Laval issued purchase order 1815320 to Falco for fifty-five (55) tanks and related equipment for a Project for Phillips 66. The purchase order was subsequently revised to remove six of the tanks from its scope, because of delays caused by Alfa Laval and its employees.

*Complaint*
*Falco Latinoamericana v. Alfa Laval*
*Page 3 of 9*

8.      As Alfa Laval continued to demand changes in project specifications, amongst other delays, the parties executed change orders to reflect the delayed specifications and delivery dates. Purchase order 1815320 and the related purchase orders are referred to herein as the Phillips 66 Purchase Orders.

9.      Alfa Laval also issued purchase order 18022470, 1024228, and 18024229 to Falco for twenty-nine (29) tanks and related equipment for a project for Molson Coors. Again, Alfa Laval demanded various changes to project specifications after the initial purchase orders and, in contemplation of those and various other delays caused by Alfa Laval and its employees, the parties executed change orders to reflect the changed specifications and delivery dates. The original purchase orders and associated change orders are referred to herein as the "Molson Coors Purchase Orders."

10.     The Phillips 66 Purchase Orders and the Molson Coors Purchase Orders are governed by the Terms and Conditions.

11.     The Terms and Conditions state that the purchase price "shall be due for payment 75 days after receipt of invoice."

12.     In total, Falco issued invoices to Alfa Laval for the Phillips 66 project totaling $2,855,848.07.

13.     In total, Alfa Laval only paid $2,365,873.96 due under the Phillips 66 invoices.

14.     Alfa Laval owes an outstanding balance of $489,974.11 under the Phillips 66 Purchase Orders.

15.     In total, Falco issued invoices to Alfa Laval for the Molson Coors project totaling $1,948,832.25.

16.     In total, Alfa Laval only paid $1,777,674.45 due under the Molson Coors invoices.

*Complaint*
*Falco Latinoamericana v. Alfa Laval*
*Page 4 of 9*

17.     Alfa Laval owes an outstanding balance of $171,157.80 under the Molson Coors Purchase Orders.

18.     Overall, Alfa Laval owes an outstanding balance on both projects of $735,343.06.

***Facts about Alfa Laval's extra-contractual delays causing additional damages to Falco***

19.     Throughout both projects, Alfa Laval caused numerous delays by demanding design changes and additional inspections.

20.     In advance of the project, Falco submitted detailed proposals for the tanks manufacture and construction, which Alfa Laval accepted as suitable.

21.     Nevertheless, Alfa Laval demanded numerous changes to various product specifications throughout the project.

22.     Indeed, at one point, Alfa Laval sent an additional inspector ("Inspector") to Falco's manufacturing location for about five months.

23.     The Inspector caused numerous delays to Falco's manufacturing process by demanding additional review of materials, demanding changes to well-established practices, and by interfering with Falco's day-to-day operations.

24.     The Terms and Conditions allows Alfa Laval to "have the right (during ordinary working hours) to participate in all inspections and acceptance procedures and [to] have access to all plans, documents and the places of manufacture of the Seller and his subcontractors." *Exhibit 1., Par. 5.*

25.     The Terms and Conditions further requires Falco "to provide free of charge all relevant gauging equipment, tools, testing equipment, premises and staff necessary to effect the test and to defray all expenses associated therewith, excluding the personal expenses of the

Purchaser's personnel." *Exhibit 1., Par. 5.*

26. It is common in the manufacturing industry for a purchaser to send an inspector to review the process for an hour or two.

27. Indeed, during the Molson Coors project, an Alfa Laval inspector traveled to Falco's manufactory and expressed that the production process was more than satisfactory.

28. However, the Inspector, at Alfa Laval's direction and acting as their agent, went far beyond the right to inspect awarded by the contract or by well-established industry standards.

29. The Inspector regularly required Falco's personnel to operate well outside of "normal working hours" resulting in significant overtime charges.

30. The Inspector also insisted that Alfa first rent him a trailer and, when that became cost-preclusive, assemble an office in their manufactory.

31. Indeed, the Inspector would even select unfinished products in the middle of the manufacturing process and demand changes before Falco's inspectors had a chance to review the items' qualities or take further steps in production.

32. Eventually, the Inspector reached the point of demanding that Falco's employees start implementing actual changes to their well-established manufacturing process based on his preferences.

33. The excess of these inspections go so far out of the bounds of the contractual provisions so as to constitute a breach of contract.

34. Alfa Laval's breach caused excessive delay to Falco's entire operation.

35. As a direct and proximate result of Alfa Laval's breach, Falco was forced to accept late delivery penalties of $52,666.50 on other purchase orders.

36. As a direct and proximate result of Alfa Laval's breach, Falco was forced to give

up three contracts totaling $2,125,149.20.

37.    But for Alfa Laval's breach and consequential delay to Falco's entire manufacturing process, Falco would not have been forced to accept these penalties or lose these contracts.

38.    In total, Falco lost $2,177,815.70 because of Alfa Laval's breach of contract.

## COUNT I – BREACH OF CONTRACT
### (Failure to pay Invoices)

39.    The allegations in the preceding paragraphs are incorporated in Count I, as if fully stated herein.

40.    Alfa Laval contracted with Falco for the production and delivery of steel tanks on the Phillips 66 and Molson Coors Projects.

41.    Falco fully performed as required under both projects.

42.    Alfa Laval owes Falco an outstanding balance of $735,343.06 under the Terms and Conditions, Phillips 66 Purchase Orders, and Molson Coors Purchase Orders.

WHEREFORE Plaintiff respectfully requests that the Court enter an order granting the following relief:

(a) AWARD Plaintiffs actual damages payable by Defendants in the amount of $735,343.06; and

(b) GRANT such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
### (Excessive Inspections and Demands for Procedural Changes)

43.    The allegations in the preceding paragraphs are incorporated in Count II, as if fully stated herein.

44.     The Terms and Conditions allowed Alfa Laval to "participate in all inspections and acceptance procedures" and to have access to all places of manufacture during normal working hours.

45.     As detailed herein, Alfa Laval's inspections went far beyond those allowed under the Terms and Conditions and reached the point of a breach of contract.

46.     Alfa Laval's breach caused significant delays to Falco's entire manufacturing process.

47.     As direct and proximate result of Alfa Laval's breach, Falco lost $2,177,815.70 in contract value.

WHEREFORE Plaintiff respectfully requests that the Court enter judgment in its favor and against the Defendant as and for consequential damages in the amount of $2,177,815.70 and grant such other and further relief as the Court deems fit and proper.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT
### (Excessive Inspections and Demands for Procedural Changes)

48.     The allegations in the preceding paragraphs are incorporated in Count III, as if fully stated herein.

49.     Count II herein alleges that Defendants breached their contract with Falco causing consequential damages. To the extent this breach may be found to be outside the bounds of the contract, Plaintiff brings this alternative pleading.

50.     Plaintiff had contracts with multiple other vendors who relied on their manufacturing process.

51.     Defendant and its' agents discussed Falco's workload and other contracts with Falco.

*Complaint*
*Falco Latinoamericana v. Alfa Laval*
*Page 8 of 9*

52.    As such, Defendant and its' agents, including the Inspector, had both actual and perspective knowledge of these contracts.

53.    Defendant and it's agents disrupted Falco's manufacturing process to the point of alienating Falco's other contracts.

54.    Defendant, by the actions of the Inspector, intentionally took acts that could reasonably be foreseen to delay and disrupt Falco's manufacturing process.

55.    As direct and proximate result of Alfa Laval's actions, Falco lost $2,177,815.70 in pre-existing contract value.

WHEREFORE, in the alternative to Count II, Plaintiff respectfully requests that the Court enter judgment in its favor and against the Defendant in the amount of $2,177,815.70 and grant such other and further relief as the Court deems fit and proper.

A JURY TRIAL IS REQUESTED ON ALL ISSUES SO TRIABLE.

Respectfully Submitted,

FALCO LATINOAMERICANA
*By Counsel*

s/ J. Garrett Kizer
J. Garrett Kizer (VSB #97682)
PJI Law, PLC
3900 Jermantown Road, Unit 220
Fairfax, Virginia 22030
Tel: (703) 865-6100
Fax: (703) 865-6125
gkizer@pjilaw.com
*Counsel for Plaintiff*

*Complaint*
*Falco Latinoamericana v. Alfa Laval Page 9 of 9*